UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
-------------------------------------------------------------X
JORDAN MILLER & ASSOCIATES, INC.,    :

                 :    Civil Action No.:

           Plaintiff,    :

                 :

      v.    :    **COMPLAINT**

                 :

OFFER SHLOMI, a/k/a VINCE OFFER, and    :
SQUARE ONE ENTERTAINMENT, INC.,    :    **Jury Trial Demanded**

                 :

          Defendants.    :
-------------------------------------------------------------X

        Plaintiff Jordan Miller & Associates, Inc. ("JMA" or "Plaintiff") hereby alleges, as and for its Complaint against Offer Shlomi, a/k/a Vince Offer ("Mr. Offer"), and Square One Entertainment, Inc. ("Square One") (together, "Defendants") as follows:

## PRELIMINARY STATEMENT

        1.      This action seeks declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' breaches of contract and misappropriations of Plaintiff's trade secrets.

## JURISDICTION AND VENUE

        2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b). District courts of the United States have original jurisdiction over civil actions brought under 18 U.S.C. § 1836 *et seq*. See 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

        3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is a diversity of citizenship among the parties and this action involves an amount in controversy

in excess of $75,000, excluding interests and costs. Plaintiff is an Illinois corporation headquartered in Illinois. Defendant Offer Shlomi is a California resident and Defendant Square One is incorporated and headquartered in California.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred there. Plaintiff is headquartered in this District, and Plaintiff's contract negotiations and performance occurred in this District.

## PARTIES

5. Plaintiff Jordan Miller & Associates, Inc. is a domestic business corporation headquartered in Illinois.

6. Defendant Offer Shlomi, a/k/a Vince Offer, is a California resident and current and/or former owner of the ShamWow! towel product.

7. Defendant Square One Entertainment, Inc. is incorporated and headquartered in California and is the/a current owner of the ShamWow! towel product.

## FACTUAL ALLEGATIONS

8. JMA is an Illinois corporation headquartered in Arlington Heights, Illinois. JMA is owned and operated by Jordan and Amy Miller. JMA specializes in, among other things, designing and creating packaging and displays for merchandise sold in retail stores.

9. Mr. Miller was first introduced to the ShamWow! product and its then-owner, Mr. Offer, in the spring of 2017. The two were introduced by an individual named Alex Ogle, who ran a retail product distribution company called Paradygm Consulting.

10. At the time, Mr. Offer was working with Mr. Ogle and Paradygm Consulting to determine how best to "relaunch" the ShamWow! towel product given that its sales had plummeted after Mr. Offer was arrested in 2009 for aggravated battery against a prostitute.

11. When Mr. Ogle, who is a retail expert, got involved with the product, he thought that the packaging for the ShamWow! towel product was so poor that, on April 7, 2017, he wrote to Mr. Offer, *inter alia*, "We really need to get this process moving at a faster rate. As I mentioned on our last call I am especially concerned with the packaging and in-store execution pieces that need to be created."

12. At the time, the packaging for the ShamWow! towel looked like this:



13. Mr. Ogle suggested that Mr. Offer bring Mr. Miller into the fold because Mr. Miller is a packaging and merchandising expert.

14. This led to a series of telephone calls between Mr. Miller and Mr. Offer during which they came to terms on an agreement (the "Agreement"). Pursuant to the Agreement, Mr. Miller assumed all of the risk of the venture underperforming, as he agreed to be paid on a commission rather than an hourly rate.

15. The Agreement was memorialized in writing. On April 11, 2017, Mr. Miller sent Mr. Offer the following email:

> Great talking to you today. I am excited to work with you on this opportunity.
>
> Per our conversation, my company, Jordan Miller and Associates will develop the retail packaging and display options, concepts through finished art for the SHAMWOW Towel Product Line.
>
> Initially we will work on the Lowes Program. Eventually we will extend and modify the concepts for the specific needs of other retailers. Different display vehicles, pack sizes, etc.
>
> Additionally, as you introduce the mop or other products to the line, we will provide the same services.
>
> Compensation will be 1% of sales paid monthly based on the prior month[']s sales.
>
> Please confirm this agreement[ ]. we will get started immediately.

16. On the same day, Mr. Offer responded, *inter alia*: "Yes this is confirmed and approved."

17. Mr. Offer also wrote, "[j]ust a note, per our discuss[ion], **ideally** Alex [Ogle]'s company can hold and allocate monthly." Plainly, there was no requirement, much less was it a material term of the Agreement, that Mr. Ogle hold and allocate payments to Mr. Miller. Moreover, Mr. Ogle unquestionably was not a party to the Agreement between Mr. Miller and Mr. Offer nor was his continued involvement in any capacity a term of the Agreement, much less a material term.

18. Mr. Miller immediately went to work developing retail packaging and display options, as well as concepts and art for the ShamWow! towel line.

19. Mr. Miller came up with a number of concepts for the ShamWow! towel line to improve the aesthetic design of the packaging. Mr. Miller also added or improved wording on the packaging to better communicate the product's features. By way of example only:

- Mr. Miller replaced the word "New" at the top of the packaging with the term "New and Improved";

- Mr. Miller designed the artwork for the "New and Improved" language at the top of the packaging";

- Mr. Miller added the term "2 pack" to the top of the packaging to make it clearer to shoppers;

- Mr. Miller created the written copy and designed the artwork for the "2 pack" language at the top of the packaging;

- Mr. Miller highlighted the size and an extremely important feature of the towel to the top of the packaging by adding in the language "20 x 20 trimmable";

- Again, Mr. Miller designed the artwork for the "20 x 20 trimmable" language at the top of the packaging;

- Mr. Miller moved the ShamWow! language downward to focus the language and added the words "The super absorbent" about the word ShamWow!;

- Mr. Miller changed the color of the packaging to include a darker orange "ShamWow!" logo and set it against a blue (rather than white) background to make the brand's logo more eye-catching;

- Mr. Miller incorporated an eye-catching shimmering effect at the center of the "ShamWow!" logo;

- Mr. Miller replaced the words, "odor resistant * mildew resistant" with a more eye-catching and explanatory "Now with Odor & mildew resistant bacteria fighting fibers";

- Mr. Miller designed the artwork for the "Now with Odor & mildew resistant bacteria fighting fibers" language;

- Mr. Miller more precisely cropped the image of the hands wringing out the ShamWow! towel, which significantly increased a shopper's ability to quickly discern the benefits and purposes of the ShamWow! towel product;

- Mr. Miller moved the "Now holds 10x its weight in liquid" into the image of the hands wringing out the ShamWow! towel product;

- Mr. Miller added (and again, designed the artwork for) the "Hundreds of uses" language;

- Mr. Miller (at Mr. Offer's request)[1] shot/created an image of the product under a pipe; and

- Mr. Miller included much improved product uses on the packaging, adding "spills," "kitchen," "windows," "laundry" and "plumbing."

20. Mr. Offer was unquestionably pleased with Mr. Miller's work. Indeed, in an April 25, 2017 email, Mr. Offer wrote to Mr. Miller, "great work on the art."

21. Mr. Miller's work product and design is pictured, below:



---

[1] This is the only design concept on which Mr. Offer gave input.

6

22. Over the following years – completely unbeknownst to Mr. Miller – Mr. Offer and, later, Square One (which had purchased ownership of the ShamWow! product from Mr. Offer) began selling the ShamWow! towel product using many of the designs provided by Mr. Miller.

23. Defendants did this without notifying Mr. Miller or paying him the 1% of sales to which JMA was entitled pursuant to the Agreement.

24. Mr. Miller discovered this fact in July 2019 when he learned that the ShamWow! towel product was being distributed and sold by a company called Allstar Marketing Group, LLC ("Allstar").

25. Allstar is incorporated in New York and its principal place of business is in Westchester County in Hawthorne, New York.

26. Allstar has a warehouse located in Hawthorne, New York. Packages, including the ShamWow! towel product, are shipped from Allstar's warehouse in New York to retail stores. These stores include, but are not limited to, CVS, Target, True Value Hardware, Aldi, Bed Bath & Beyond and Menard's. The back of the ShamWow! towel product packages shipped by Allstar indicate that they were shipped from Allstar's headquarters in Hawthorne, New York.

27. Defendants breached their agreement with JMA by failing to pay Mr. Miller the 1% of sales to which he was entitled.

28. Mr. Miller's discovery led to an email exchange in which Mr. Offer conceded that he had an agreement with Mr. Miller. Specifically, Mr. Offer wrote, "Ok so i spoke to Allstar they said they have nothing to do with it that you can deal with me since *we had the agreement.*"

29. Mr. Miller then sent an email requesting the contact information for Allstar.

30. Despite having admitted that he and Mr. Miller had an agreement, Mr. Offer failed to provide him with the requested contact information.

31. Mr. Offer further claimed to no longer own the ShamWow! product and that "Alex [Ogle] walked away from the deal." However, as noted, Mr. Ogle was never a party to the Agreement and his involvement was not a term of the Agreement.

32. Mr. Offer also asserted that the only work done by Mr. Miller was "based off of [Mr. Offer's] original packaging artwork" and that all Mr. Miller did was "tweak" that artwork. This assertion was not only false – almost all of Mr. Miller's work was entirely original – but also irrelevant. There was no requirement in the Agreement that Mr. Miller start from scratch, and the work he did was praised by Mr. Offer.

33. Mr. Offer concluded, "So i'm sorry, there's nothing for you, i wouldn't waste your time."

34. To this day, using Allstar as their distributor, Mr. Offer and Square One continue to sell the ShamWow! towel product nationally, including on infomercials and in stores. These stores include, but are not limited to, Menards, CVS, Target, True Value Hardware, Bed Bath & Beyond and Aldi. It is also sold on the Home Shopping Network, Walmart.com, Amazon.com and the ShamWow! website. Mr. Miller has not been paid a cent.

35. Images of the ShamWow! towel product and packaging sold in the past two and a half years are below. As can easily be seen, ShamWow! packaging continues to use many of the design concepts developed by Mr. Miller:

- This package was sold in stores in 2018:



- This package was sold in stores in 2019:



- This package was sold in stores in 2020:



- This is the back of the 2020 packaging, which includes the photo of the ShamWow! towel product under the pipe that Mr. Miller created:



10

- Images from 2020 display case:

 

## FIRST CAUSE OF ACTION
**(Breach of Contract)**

36. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

37. Plaintiff and Defendant Offer entered into a contractual agreement on April 11, 2017.

38. Defendants breached the contractual agreement by failing to pay Mr. Miller 1% of sales of the ShamWow! towel product after April 11, 2017.

39. As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered, and continues to suffer, economic harm for which it is entitled to an award of damages to the greatest extent permitted under law.

**SECOND CAUSE OF ACTION**
**(Misappropriation of Trade Secrets under 18 U.S.C. § 1836(b) *et seq.*)**

40. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

41. Plaintiff's proprietary design and marketing work is confidential work with economic value. This proprietary design and marketing work is related to the ShamWow! towel product, which is sold in interstate commerce.

42. Plaintiff took reasonable measures to keep its proprietary design and marketing work confidential, including but not limited to, only providing it to Defendant Offer.

43. Plaintiff derives independent economic value from its proprietary design and marketing work not being generally known and not being readily ascertainable through proper means.

44. Defendants misappropriated Plaintiff's proprietary design and marketing work through improper means, in the breach of their contractual duties to Plaintiff, as described above, in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b), *et seq.*

45. Defendants' conduct was willful and malicious and entitles Plaintiff to an award of damages.

**THIRD CAUSE OF ACTION**
**(Misappropriation under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*)**

46. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

47. Plaintiff's proprietary design and marketing work qualify as trade secrets under the Illinois Trade Secrets Act because they were kept sufficiently secret to derive economic value from not being generally known to others.

48. Plaintiff took reasonable measures to keep its proprietary design and marketing work confidential, including, but not limited to, only providing it to Defendant Offer.

49. Defendants misappropriated Plaintiff's proprietary design and marketing work through improper means.

50. Defendants' conduct was willful and malicious and entitles Plaintiff to an award of damages.

## FOURTH CAUSE OF ACTION
### (Promissory Estoppel)

51. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

52. Defendant Offer promised Plaintiff that he would be paid 1% of all ShamWow! product sales after April 11, 2017 in exchange for its proprietary design and marketing work.

53. Plaintiff reasonably relied on Defendants' promise by, *inter alia*, taking considerable time to create and develop proprietary design and marketing work for Defendant Offer, which was then purchased by Defendant Square One.

54. Defendants failed to act in accordance with their obligations and/or promise by failing to make payments to Plaintiff in consideration of Plaintiff's proprietary design and marketing work.

55. As a direct and proximate result of Defendants' failure to act in accordance with their promise and/or obligations, Plaintiff has suffered, and continues to suffer, economic harm for which it is entitled to an award of damages to the greatest extent permitted under law.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

56. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

57. Defendant Offer promised Plaintiff that it would be compensated in exchange for Plaintiff's proprietary design and marketing work. That proprietary design and marketing work was subsequently purchased by Defendant Square One.

58. Plaintiff reasonably relied on Defendant Offer's promise by, *inter alia*, devoting time and energy and creating proprietary design and marketing work for Defendants' benefit. As a result, Defendants have been enriched at Plaintiff's expense.

59. Permitting Defendants to retain the monies they received due to Plaintiff's unpaid work would violate notions of good conscience and, thus, Defendants should be required to remit to Plaintiff the monies they received due to its work after April 11, 2017.

## SIXTH CAUSE OF ACTION – IN THE ALTERNATIVE
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

60. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

61. Plaintiff and Defendant Offer entered into a binding contract.

62. Defendants owed a duty to Plaintiff to act in good faith and conduct fair dealing under the contract, including by paying it 1% of all sales of ShamWow! product after April 11, 2017. Defendants breached this implied covenant of good faith and fair dealing by failing to make any payments to Plaintiff.

63. As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered, and continues to suffer, economic harm for which it is entitled to an award of damages to the greatest extent permitted under law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Defendants for the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of Illinois;

B. An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate Plaintiff for all monetary and/or economic damages;

C. Prejudgment interest on all amounts due;

D. An award of Plaintiff's reasonable attorneys' fees and costs; and

E. Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: December 17, 2020
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
     Michael J. Willemin
     David A. Schmutzer

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
dschmutzer@wigdorlaw.com

*Counsel for Plaintiff*