UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JORDAN MILLER & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-cv-7478 |
| | ) | Judge Marvin E. Aspen |
| OFFER SHLOMI a/k/a VINCE OFFER, and | ) | |
| SQUARE ONE ENTERTAINMENT, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

This lawsuit involves the work that Plaintiff Jordan Miller & Associates, Inc. allegedly put in to design the "ShamWow!" towel's packaging. (*See* Complaint ("Compl.") (Dkt. No. 1) ¶¶ 15-19.) Presently before us is Defendants' motion to dismiss under Rules 12(b)(2) and (6). (Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b) ("Defendants' MTD") (Dkt. No. 9).) For the reasons that follow, Defendants' Motion is granted in part and denied in part.

## BACKGROUND

The facts set forth below are taken from the Complaint and are assumed true for the purposes of this Rule 12 motion. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiff is a domestic business corporation headquartered in Arlington Heights, Illinois. (Compl. ¶¶ 5, 8.) Plaintiff is owned and operated by Jordan and Amy Miller, who specialize in designing and creating packaging for retail merchandise. (*Id.* ¶ 8.) Defendant Offer Shlomi, also known as Vince Offer, is a California resident who is the "current and/or former owner of the

ShamWow! towel product." (*Id.* ¶ 6.)  Defendant Square One Entertainment, Inc. is incorporated and headquartered in California and is "the/a current owner of the ShamWow! towel product." (*Id.* ¶ 7.)

In 2017, Mr. Offer was working with Paradygm Consulting's retail consultant, Alex Ogle, to relaunch the ShamWow! towel. (*Id.* ¶ 10.)  Alex Ogle recommended a redesign the ShamWow!'s packaging. (*Id.* ¶ 11.)  He wrote to Mr. Offer: "As I mentioned on our last call I am especially concerned with the packaging and in-store execution pieces that need to be created." (*Id.*)  Alex Ogle then introduced Mr. Offer to Jordan Miller, a packaging and merchandising expert, for product packaging design work. (*Id.* ¶¶ 9, 13.)

Jordan Miller and Mr. Offer proceeded to share a series of telephone calls to discuss the ShamWow! packaging design project. (*Id.* ¶ 14.)  On April 11, 2017, Jordan Miller sent Mr. Offer the following email:

> Great talking to you today.  I am excited to work with you on this opportunity.
>
> Per our conversation, my company, Jordan Miller and Associates will develop the retail packaging and display options, concepts through finished art for the SHAMWOW Towel Product Line.
>
> Initially we will work on the Lowes Program.  Eventually we will extend and modify the concepts for the specific needs of other retailers.  Different display vehicles, pack sizes, etc.
>
> Additionally, as you introduce the mop or other products to the line, we will provide the same services.
>
> Compensation will be 1% of sales paid monthly based on the prior month[']s sales.
>
> Please confirm this agreement[ ].  we will get started immediately.

(*Id.* ¶ 15 (brackets in Complaint).)  Mr. Offer responded: "Yes this is confirmed and approved.  Just a note, per our discuss[ion], ideally Alex [Ogle]'s company can hold and

allocate monthly. I'm not set up right now to do royalties monthly." (Compl. ¶¶ 16, 17; Emails (Dkt. No. 9-7) at 3.)

Immediately following these confirmation emails, Plaintiff went to work developing retail packaging, display options, concepts, and art for the ShamWow! towel line. (Compl. ¶ 18.)

The Complaint lists about 16 design changes that he made to the ShamWow!'s packaging. (*Id.* ¶¶ 19.) Before Plaintiff's involvement, the ShamWow!'s packaging looked like:



(*Id.* ¶ 12.) Plaintiff's work product and design looked like:



(*Id.* ¶ 21.) In April 25, 2017, Mr. Offer emailed Mr. Miller and commented, "great work on the art." (*Id.* ¶ 20.) Around that time, Square One purchased ownership of the ShamWow! product

line from Mr. Offer. (*Id.* ¶ 22.) Unbeknownst to Mr. Miller, ShamWow! towels retailed in 2018, 2019, and 2020, respectively, with the following packaging:



(*Id.* ¶ 35.) Neither Mr. Offer nor Square One notified Mr. Jordan about the 2018, 2019, and 2020 retail efforts in stores like CVS, Target, True Value Hardware, Aldi, Bed Bath & Beyond, and Menards. (*Id.* ¶¶ 23, 26.) Nor did they pay 1% of sales to Plaintiff[1] as was specified in the email that confirmed the agreement's terms. (*Id.* ¶¶ 15, 23.)

Mr. Miller eventually emailed Mr. Offer about the lack of 1% payment. (*Id.* ¶ 28.) Mr. Offer refused to make payment, and explained that he spoke to the distribution company, Allstar Marketing Group, LLC, and "they said they have nothing to do with it that you can deal with me since we had the agreement." (*Id.*) Mr. Offer then claimed that no deal was ever reached with Plaintiff because "Alex [Ogel] walked away from the deal." (*Id.* ¶ 31.)

**STANDARD OF LAW**

A Rule 12(b)(2) motion to dismiss tests whether a federal court has personal jurisdiction over a defendant. If a court lacks personal jurisdiction over a party to an action, it must dismiss

---

[1] The Complaint alleges failure to pay Mr. Miller even though the alleged agreement calls for payment to be made to Plaintiff, Jordan Miller & Associates. We assume that Plaintiff intended to allege failure to pay the plaintiff, Jordan Miller & Associates, not the individual who shares its name, Mr. Miller.

4

the case as to that party. Fed. R. Civ. P. 12(b)(2). A complaint need not include facts alleging personal jurisdiction, but when a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction over the defendant. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In determining whether personal jurisdiction exists, we accept all well-pleaded allegations in the complaint as true. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The court may consider affidavits or other evidence in opposition to or in support of its exercise of jurisdiction. *Purdue Research*, 338 F.3d at 783. "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* We resolve factual disputes in the plaintiff's favor, but unrefuted assertions by the defendant will be accepted as true. *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Christensen v. County of Boone*, 483 F.3d 454, 458 (7th Cir. 2007)). A complaint must set forth a "'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo*, 526 F.3d at 1081 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although detailed factual allegations are not required, the complaint must allege enough facts "to state a claim to relief that is plausible on its face" and which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Under Rule 12(b)(6), we

5

accept all well-pleaded factual allegations as true and construe all reasonable inferences in the plaintiff's favor. *See id.*

## ANALYSIS

We address Defendants' motion to dismiss first under Rule 12(b)(2) and then under Rule 12(b)(6).

**I.      Motion to Dismiss for Lack of Personal Jurisdiction[2]**

Personal Jurisdiction can be either general or specific. A federal court sitting in diversity must rely on the law of personal jurisdiction that governs the courts of general jurisdiction in the state where the court is sitting, here Illinois. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (citing *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992)). Illinois "permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment." *Kipp v. Ski Enter. Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). We address general and specific personal jurisdiction in turn.

A defendant with "continuous and systematic" contacts with a state is subject to general jurisdiction in that state in any lawsuit, even if the lawsuit is unrelated to those contacts. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Purdue Research Found.*, 338 F.3d at 787 n.16 (discussing how the threshold for exercising general jurisdiction over a defendant is high such that the contacts must be extensive and pervasive). As alleged, the Complaint demonstrates that the defendants had continuous and systematic contacts

---

[2] Defendants ask that we take judicial notice of the matters attached to their motion as Exhibits 1, 2, and 3. We will take judicial notice of these exhibits because they are printouts of state and federal government records. *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003). These exhibits are ShamWow!'s trademark, Square One's Articles of Incorporation filed with the California Secretary of State, and Paradygm Consulting, Inc.'s Articles of Incorporation filed with the North Carolina Secretary of State.

with Illinois by way of their product distribution network related to ShamWow! towels. Indeed, the Complaint suggests that ShamWow! towels were sold in Illinois by alleging that ShamWow! towels were distributed to retail stores with significant Illinois operations like CVS, Target, True Value Hardware, Aldi, Bed Bath & Beyond, Menards, and Walmart. (*Id.* ¶¶ 26, 34.) Accordingly, there is general personal jurisdiction in Illinois.

Specific jurisdiction is "case-linked." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Courts may exercise specific jurisdiction "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesth. Chi. v. Anesthesia Ass'n*, 623 F.3d 440, 444 (7th Cir. 2010). However, a defendant is not subject to jurisdiction solely because the plaintiff suffered injury in the forum state. *Advanced Tactical Ordinance Sys. v. Real Action Paintball*, 751 F.3d 796, 802 (7th Cir. 2014). In "a breach of contract case, it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to minimum contacts analysis." *RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1278 (7th Cir. 1997) (internal citations omitted). Of course, "a contract between a state resident and an out-of-state defendant alone does not automatically establish sufficient minimum contacts." *Citadel Grp. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (internal citation omitted). Courts look to several factors to determine whether there is specific jurisdiction over a breach of contract lawsuit: (1) where the contract was negotiated or executed, (2) where the contract was to be performed, (3) where payment was to be made, (4) whether the defendant was ever physically present in Illinois related to the contract, (5) who initiated the transaction, and (6) the occurrence of telephone calls and other communications to and from Illinois. *See, e.g.*, *AS Engine Leasing v. Vision Airlines*,

No. 14-cv-1436, 2014 WL 6461760, at *3 (N.D. Ill. 2014) (citing *Citadel Grp. v. Merle West Med. Ctr.*, No. 06-cv-6162, 2007 WL 5160444, at *3 (N.D. Ill. 2007)).

A review of these factors supports a finding of specific personal jurisdiction over Defendants. The first factor weighs favorably towards Plaintiff since the contract was negotiated by telephone and over email with Plaintiff in Illinois and Mr. Offer in another state. The second factor, place of performance, favors Plaintiff because the contracted-for design work was performed in Illinois. The third factor also favors Plaintiff since payments were supposed to be made to Plaintiff, an Illinois business entity headquartered in Arlington Heights, Illinois. The fourth factor weighs neutrally because although the defendants claim that they were never physically present in Illinois, they nevertheless distributed ShamWow! towels for retail throughout Illinois. (Compl. ¶¶ 26, 34.) The fact that Mr. Offer initiated the contract with Plaintiff also favors Plaintiff. (*Id.* ¶¶ 9-13 (alleging that Mr. Offer had Alex Ogle make an introduction to a packaging designer like Plaintiff).) The final factor also weighs in favor of specific personal jurisdiction in Illinois since there was "a series of telephone calls between Mr. Miller and Mr. Offer" and emails directed to Plaintiff in Illinois. (*Id.* ¶¶ 14-17.)

Defendants next argue that Illinois' fiduciary shield doctrine should deny personal jurisdiction since Defendants' activity was made solely on behalf of an employer or other principal. *See Rice v. Nova*, 38 F.3d 909, 912 (7th Cir. 1994); *see also Rollins v. Ellwood*, 565 N.E.2d 1302, 1313-18 (1990). In *Rollins*, for example, the Illinois Supreme Court held that a policeman sent into a state to serve an arrest warrant cannot be sued there for false arrest, although his superiors could have been sued there. *Rollins*, 565 N.E.2d at 1313-18. But the "shield is withdrawn if the agent was acting also or instead on his own behalf —'to serve his personal interests.'" *Rice*, 38 F.3d at 912 (quoting *Rollins*, 565 N.E.2d at 1318). Thus, the

fiduciary shield doctrine does not save Mr. Offer since he served his ownership interest in the ShamWow! towel when he engaged Plaintiff's design services in Illinois.

Accordingly, specific personal jurisdiction exists over the parties in Illinois, in addition to general personal jurisdiction. Defendants' motion is denied as to Rule 12(b)(2).

## II. Motion to Dismiss for Failure to State a Claim

Defendants next move to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Plaintiff's claims are: (1) breach of contract, (2) misappropriation of trade secrets under 18 U.S.C. § 1837(b), (3) misappropriation of trade secrets under 765 ILCS 1065/1 *et seq.*, (4) promissory estoppel, (5) unjust enrichment, and (6) breach of the implied covenant of good faith and fair dealing. (*See generally* Compl.) We address each count in turn.

### A. Breach of Contract[3]

Plaintiff alleges that Plaintiff and Mr. Offer contracted for Plaintiff's packaging design services in exchange for 1% of ShamWow! towel sales, and then Defendants breached their promise to pay. (*Id.* ¶¶ 36-39.)

To "prevail on a breach of contract claim the plaintiff must show: (1) the existence of a valid and enforceable contract, (2) [the plaintiff] substantially performed the contract, (3) the defendant breached that contract, and (4) damages resulted from the alleged breach of contract." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018).

---

[3] Plaintiff's Complaint references certain email communications without attaching those emails. (*See, e.g.*, Compl. ¶¶ 15, 17, 20, 28, 29.) Defendants attached copies of those emails in their entirety to their motion, and ask that we consider them in ruling on their motion. (Dkt. No. 9-7.) We grant Defendants' unopposed request and consider the emails that Defendants attached to their motion since they are "referred to in the plaintiff's complaint and are central to [the] claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

Plaintiff argues that the Complaint fails to plead an enforceable contract by having failed to show acceptance.  Specifically, Mr. Offer argues that his alleged acceptance was conditioned on Alex Ogle's ability to process royalties. *See, e.g.*, *McGann v. PNC Bank*, 11-cv-6894, 2013 WL 1337204, at *6 (N.D. Ill. 2013) ("Where one accepts an offer conditionally or introduces a new term into the acceptance, no acceptance occurs, rather it becomes in effect a counterproposal which must be accepted by the offeror before a valid contract is formed.").

Defendants' theory for dismissal is not supported by the allegations.  As alleged, Plaintiff had a series of telephone conversations with Mr. Offer, then sent a confirmatory email outlining the material terms of the agreement (design services in exchange for 1% of sales paid monthly).  Mr. Offer confirmed his acceptance: "Yes this is confirmed and approved.  Just a note, per our discuss[ion], ideally Alex's company can hold and allocate monthly.  I'm not set up right now to do royalties monthly." (Dkt. No. 9-7 at 3.)   Alleging such a response to a confirmatory email is an abundantly clear way to plausibly plead acceptance.

Defendants argue that the second two sentences of Mr. Offer's email did not constitute acceptance because it was conditional and/or a counteroffer.  That argument misses its mark for three reasons.  First, Mr. Offer merely "note[d]" that "*ideally*" Mr. Ogle could process the royalties.  The word "ideally" does not imply conditionality or rejection, but rather an aspirational side note.  Second, if Mr. Offer intended to condition his acceptance on Mr. Ogle, he would have written something like: "Yes this is confirmed and approved, *but only if Mr. Ogle can process the royalties*."  Third, the Complaint alleges that Mr. Offer conceded that he had an agreement with Mr. Miller: "Ok so i spoke to Allstar they said they have nothing to do with it

that you can deal with me since *we had the agreement*." (Compl. ¶ 28.)[4]

Defendants next argument is also unconvincing. Defendants argue that the email communications between Mr. Offer and Alex Ogle, with Plaintiff's Jordan Miller CC'd, indicate that they did not enter into the agreement with Plaintiff. But Alex Ogle emailed "we will figure this out" in response to Mr. Offer's aspiration that he be able to process the royalty payments. The fact that Alex Ogle said he will figure out how to make those payments does not come close to invalidating the underlying agreement. If anything, it plausibly suggests that Mr. Offer was able to perform his end of the deal. (Dkt. No. 9-7 at 3.)

For these reasons, Plaintiff sufficiently pleaded the existence of a valid and enforceable contract, that Plaintiff performed the contract by providing package designs, that the defendant breached the contract by refusing to pay, and that Plaintiff was damaged by not receiving the promised payments. Accordingly, Plaintiff's breach of contract claim survives the motion to dismiss.

### B.  Trade Secret Misappropriation

Plaintiff pleads claims for trade secret misappropriation under both 18 U.S.C. § 1837(b) (count II) and 765 ILCS 1065 (count III). Defendants move to dismiss both for failure to state a claim. Both parties agree that the pertinent legal analysis under both statutes overlap so we address both causes of action jointly. *See Packaging Corp. of Am. v. Croner*, 419 F. Supp. 3d 1059, 1065-67; *see also Aon v. Alliant*, 415 F. Supp. 3d 843, 847 (N.D. Ill. 2019).

To state a claim for misappropriation, the plaintiff must allege that (1) the information at issue was a trade secret, (2) the information was misappropriated, and (3) it was used in the

---

[4] Nor did Mr. Offer indicate an inability to perform the agreement's material terms. Had Alex Ogle been unable to process the royalty payments, as was ideal to Mr. Offer, Mr. Offer could have reasonably found another way to process the promised payments.

11

defendant's business. *See, e.g.*, *Gen. Elec. Co. v. Uptake Techs.*, 394 F. Supp. 3d 815, 831 (N.D. Ill. 2019); *Mission Measurement v. Blackbaud*, 216 F. Supp. 3d 915, 920 (N.D. Ill. 2016).

Defendants first argue that the information at issue was not a trade secret. A trade secret is information like "technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers" that is "sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use" and "the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d). To survive the pleading stage, a complaint can describe trade secret information in general terms. *See Covenant Aviation Sec. v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014) (collecting cases).

The instant lawsuit is distinguishable from the lone case cited by Plaintiff, *Maxtech v. Robert Bosch Tool Corp.*, 255 F. Supp. 3d 833, 844 (N.D. Ill. 2017). *Maxtech* involved the "*process for making* a type of retail packaging." *Id.* (emphasis added). *Maxtech* did not go so far as to hold that the actual public-facing package design amounted to a trade secret. Unlike *Maxtech*, Plaintiff's *process for creating* a package design is not an issue in this lawsuit. Rather, Plaintiff's lawsuit pertains to the final package design that Plaintiff alleges it contractually made for Defendants and intended to be public-facing. (*See* Compl. ¶¶ 40-45.) Nor does Plaintiff allege that Defendants misappropriated Plaintiff's process.

Accordingly, Plaintiff failed to state a claim for trade misappropriation by having failed to allege both that the final package's design was a trade secret and that it was misappropriated. We thus dismiss the federal and state trade secret misappropriation claims.

C.   **Promissory Estoppel**

Defendant seeks dismissal of the promissory estoppel claim on the basis that it is inconsistent with the breach of contract claim. Although the Complaint does not plead it in the alternative, Plaintiff clarified in its Response brief that it intended to proceed with this legal theory in the alternative under Rule 8(d)(2). *See Bohling v. Pharmacia*, 156 F. Supp. 2d 1010, 1017 (N.D. Ill. 2001) ("a party may plead a claim for breach of contract and promissory estoppel in the alternative" until it is "determined an enforceable contract exists[,] then a party can no longer recover under a promissory estoppel theory.") Although we determine that Plaintiff sufficiently alleged a breach of contract claim, we reserve the determination as a matter of law until the parties have had an opportunity for discovery. Therefore, the promissory estoppel claim survives the pleading stage until the contract question is resolved as a matter of law.

D.   **Unjust Enrichment**

Defendant similarly argues that the unjust enrichment claim should be dismissed because it is engulfed by the breach of contract claim. Like we resolved the promissory estoppel challenge, Plaintiff's unjust enrichment claim is pleaded in the alternative. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("Of course, a party may plead claims in the alternative, *i.e.*, she may plead a claim for breach of contract as well as unjust enrichment.") (internal citation and quotations omitted). The unjust enrichment claim, pleaded in the alternative to the breach of contract claim, thus survives the pleading stage until the contract question is resolved as a matter of law.

E.   **Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff's sixth cause of action is for breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 60-63.) Under Illinois law, courts dismiss claims for breach of the

13

implied covenant of good faith and fair dealing when they are not alleged within a breach of contract claim. *See, e.g.*, *Zeidler v. A & W Rests.*, 301 F.3d 572, 575 (7th Cir. 2002); *Hickman v. Wells Fargo Bank*, 683 F. Supp. 2d 779, 793 (N.D. Ill. 2010) (holding that the obligation to act in good faith "does not provide a person with a separate, independent cause of action"). Plaintiff appears to abandon this claim in its Response brief, stating that it "agrees that a breach of the covenant of good faith and fair dealing is not an independent cause of action under Illinois law." (Plaintiff's Response (Dkt. No. 13) at 19 n.4.) Accordingly, we dismiss the cause of action for a breach of the implied covenant of good faith and fair dealing.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted in part and denied in part. To the extent it is granted, we dismiss both trade secret misappropriation claims. It is so ordered.

Honorable Marvin E. Aspen
United States District Judge

Dated: May 13, 2021
　　　　Chicago, Illinois